## JACOB BARNEY'S LESSEE v. BARCLAY TOWNSEND, JAMES BENSTON, JOSHUA HOPKINS et al.

Supreme Court. March 23, 1801.

*Wilson's Red Book, 326.**

*Horsey* and *Wilson* for plaintiff. *Cooper, Vining, Ridgely* and *Bayard* for defendants.

The action was brought for two tracts, called "Now or Never," 158⅔ acres, and "Fairplay," 124½ acres. Plaintiff made out a regular title from Jesse Moore, who had surveyed said lands under two warrants from the Recorder of Sussex, dated 8th of June, 1795. The caution money was paid by, and patents granted to plaintiff.

*Ridgely* moved for a nonsuit. The claim is under two warrants granted to the same person, and the surveys contained more than two hundred acres. It was the manifest intention of the Land Office Laws of this state that no individual should have the privilege of taking up more than two hundred acres of the vacant lands: a special warrant shall issue, 2 Del.Laws 1160; "and no warrant shall issue to any one person for any greater quantity than two hundred acres of land," *idem* 1163. If the interpretation of this law is only to restrict the number of acres in each warrant and to allow any individual to secure what he pleases by more warrants, the intention of the Act is defeated. The design was a beneficial one; it was to let every person in for a share and to prevent monopoly. In Kent County, and in some instances here, I have known gentlemen to borrow the names of individuals when they wished to secure more than two hundred acres. In chapter LVII., s. 5 [2 Del.Laws 1177], the quantity to each individual adjoining, claiming, or possessing under a proprietary warrant is very specially restricted to two hundred acres, because such warrants were not esteemed grants, and their lands held

---

* Pages numbered *326–372* in *Wilson's Red Book* are found inserted following the title-page of the manuscript.

vacant; but where the legislature designed each individual to be unlimited in quantity (as in the case of Indian leases [2 Del. Laws] 1292), they have said the party may take a warrant etc. "for the whole quantity." It is the evident sense of all those Acts taken together, that no one person should secure to himself more than two hundred acres of vacant land of the description this is contended to have been, though we acknowledge he may do it by several warrants under different names. If I am right in this construction, these warrants containing more than two hundred acres when taken together and being dated on the same day, there can be no rule by which we can distinguish the lawful two hundred acres from the residue, and therefore the whole will be void for uncertainty; and the plaintiff having shown no title, the defendants are entitled to a nonsuit.

*Wilson.* This objection to the plaintiff's title is of great importance to the public, as it is not to be denied that generally the inhabitants have proceeded in their own names to secure the vacant lands in their possession; but it is not founded on the words of the Act nor upon the intention. Unless we heap intention upon intention, the words "that no warrant shall issue" etc. do not extend to a case where more warrants than one shall have issued. The intention as expressed was evidently to prevent the taking up more than two hundred acres under one warrant. This is admitted, but the gentlemen say there is another intention that no one person shall secure in his own name more than two hundred acres, but there is no evidence of such an intention; and it is a most unwarranted and dangerous mode of construction that shall make a simple and plain sentence, of one undeniable and certain meaning, also carry a second meaning not expressed and not obvious. It appears to me not only not intimated but plainly excluded by the words and natural sense of the terms used. How easily might the legislature have said "warrants shall not issue," or "one person shall not take out a warrant or warrants for" etc., and they would have effected what defendants' counsel say they intended. It is admitted by Mr. Attorney's argument that the restriction might have been evaded by borrowing the names of those who would transfer their privilege; for that very reason, no doubt, the legislature might have plainly seen such a restriction nugatory, and therefore they have not chosen to impose it. But the restriction of each warrant to two hundred acres was a beneficial provision. This prevented a monopoly by parcelling out the lands. This reduced the expense of litigation before the Commissioners. This enabled all the adjoining claimants to obtain a portion of an intermediate vacancy. This prevented the inconveniences which had been found to result from embracing a

whole neighborhood in one survey, and this provision could not be eluded, though the other intention set up by the gentlemen might have been. After the state's officers have granted us the warrants, surveyed the lands, taken the caution money, and granted us patents, and after they have been in this practice for eight years, when now most of the vacant land is paid for, the rule of *communis error facit jus* ought to have its operation, even if our construction should not be the true one, but the Court should approve of what appears to us but a conjectural interpretation.

The late Recorder has told us that there was a doubt whether more warrants than one could issue to one individual, and accordingly some gentlemen chose to take other warrants in the names of their friends, but he never heard it doubted that one man could not take up more than two hundred acres under several warrants. When a man was possessed of and had paid for several different plantations, which were in different parts of the county but vacant in whole or in part, how hard would it be that he should be confined to two hundred acres. The legislature certainly intended to prohibit only the oppression of the poor, and not to provide an agrarian law by which the rich, as well as the poor, might take the advantage of innocent possessors or purchasers.

The provision for the distribution of lands held under proprietary warrants, that is, warrants to survey for the use of the Proprietary, so far from fortifying the construction set up by defendants' counsel, tends to defeat it by proving too much, for there was no necessity for such a careful provision if vacant lands were already subjected to those terms. It would have produced the effect if they had pronounced such lands still vacant and unappropriated. The Act in favor of the holders of Indian lands had another and entirely different object, which was to allow the securing them under one warrant and survey upon the terms of warrants since 1760 and before 1776.

Nor is the argument for the avoiding both patents because of uncertainty good, for if only two hundred acres could be secured under both warrants, the warrants were not void before they were laid; because it did not appear whether they were for more or less than two hundred acres until laid, and as one survey was made and dated a day before the other, the first is at all events safe, wherefore defendant cannot be entitled to a nonsuit on either ground.

*Bayard.* The point upon which we move for the nonsuit is an extremely plain one, and we offer our objection in this form because if we demur, we lose the benefit of other objections to plain-

tiff's title, which arise from our evidence. The practice of the officers cannot go farther back than 1793, and there was never a case of such short practice held sufficient to direct a superior court in the construction of a law. If this Court are not to interpose in a case for the first time moved before them, how shall they correct the inferior courts of Commissioners, if they choose to persist in error? The practice of the Commissioners as to re-surveys was corrected by the appeals without hesitation in the case of Mr. Wells. Unless the warrants had been limited to two hundred acres, a few surveyors would have had the benefit of all the vacant land. There may have been cases where it was convenient that an individual should have more than two hundred acres, but they might have done in this as in business of the eight per cent loan where it was allowed to individuals to put in, in shares of but four thousand dollars each, but gentlemen borrowed the names of individuals. Why should the legislature have restricted one warrant to two hundred acres, if the same man might take up six hundred acres under three warrants; it might as well have been done by one. The words of the Act are not the object, it is the intention that is the law, *qui haeret in literâ haeret in cortice*. "No warrant shall issue for more than two hundred acres" excludes the issuing of other warrants for more than that quantity. Why should the legislature not allow more than two hundred acres to an individual in a proprietary survey which is held vacant, if individuals are allowed more than two hundred acres of other vacant lands?

These surveys were made at one time, as the surveyor has testified, and, being one act, if one is void, both are so; for one cannot be established, and the other void. A partial disclosure of a new discovery will avoid a patent for it *in toto,* and so here the whole intention must be frustrated, being a legal fraud, an intention to obtain more lands than the law allows.

PER CURIAM. JOHNS, C. J. We are unanimously of opinion we are not to enter a nonsuit in this stage of the cause. We will give our opinions on the other point if necessary, but we may have more light on this subject before the cause is over.

*Bayard.* We wish to know the ground of the Court's opinion.

JOHNS, C. J. We may differ in our reasons, but we consider this an important point, and we will refuse the nonsuit because we leave the plaintiff without remedy, but if we give our opinion at the end of the business, there may be an exception. I have an opinion, which I will not deliver until it becomes necessary, for I may hear something that may change my opinion.

Defendants gave in evidence an Act of Assembly of the State of Maryland passed October 23, 1711, authorizing the condemnation of land for the Nanticoke Indians, divesting the title of the then holders "when such land is laid out and paid for"; the return of the Commissioners named in the Act, dated December 15, 1711, containing the courses and distances and valuation of a tract called Greenland; also an Act of Assembly of said state, May 24, 1768, directing a sale of said lands; deeds to Mitchell and Forman by the Commissioners named in the Act of November 17, 1760; but showed no title from these grantees to the present defendants.

Plaintiff showed the Greenland patent of 1675, the course and distances of which left out the vacancy included in plaintiff's patents between it and Broad Creek; the second course of which patent is followed by the words, "down the aforesaid creek side — perches thence" etc. Also the Acts of 1692, c. 17, 1716, c. 1 and c. 3, 1704, c. 42, s. 1, to show that Lord Baltimore in 1711 was not in Maryland destitute of political powers and did not consent to the Act of 1711, but that his proprietary rights were acknowledged; the courses, if the return made by the Commissioners in 1711 varied from those of the patent, leaving less vacancy near the creek, and those of the deeds to Mitchell and Forman still less.

Plaintiff's counsel. The lines of the patent called Greenland leave out two hundred and eighty-three acres binding on the creek. The circumstance that a creek was near the patent is not a reason that it must bind on the water, unless there was some intention that the creek should be the boundary expressed in it. Where the lines are described to go down a creek, or the water courses, or as binding with it etc., it is unnecessary that the courses and distances should pursue the meanders of the water; but in this case, on the only line of the patent which suits the water, it calls for it and afterwards names it no more, but the expressions rather exclude the idea that what is said of the second line should be applicable to the rest. In the State of Maryland the practice has been generally in modern times to name one boundary only, that the Proprietary might not be defrauded. If the lands claimed by us are not within the patent called Greenland, they were not condemned, for although the later runnings may enclose part of the lands, yet the Proprietary was never paid for them, and the Act of Assembly only divesting the title "when such land is laid out and paid for," his title never was divested; and estate cannot vest (except when transferred by livery) until a condition precedent is performed, and this is clearly a condition of that sort from the manifest intention of the Act.

To divest property without compensation is contrary to the principles of the social compact, 2 Dall. 310-315. And statutes divesting private property, being an exercise of the highest legislative authority, should be construed strictly. Lord Baltimore was only a private citizen at the passing the Act, and his property could not have been divested by the terms of the Act until he was paid for it. His contract with Mr. Penn transferred these lands to him, which, never having been granted by either Proprietary, were subjected by the laws of this state to be located and patented.

The defendants have not shown a subsisting title, for they have neither shown a title from Mitchell nor Forman, nor even from the Indians, whereby former possessions can be united with their present possession, and therefore the title of plaintiff, if a legal one, must prevail. If the lands in dispute had not even been vacant before plaintiff's location of them, yet he must recover. For although the Land Office laws contemplate vacant land, yet any man who has no legal title to his lands may so far consider them vacant as to take a title for them under the state which will be good against all the world but a claimant under a more ancient title. In *Harris's Lessee v. Gordon,* the plaintiff's title being defective, he was obliged to secure his anciently patented land under the laws of the state, and then brought ejectment against the defendant who claimed under another patent, which the jury thought did not include the land, and plaintiff had a verdict. Lands to which there exist no legal title may as properly be called vacant as those for which a title has never been made, and by this construction much inconvenience is prevented to those who have lands the title to which is defective, without prejudicing the public interest in clear cases of escheat.

Defendants' counsel. The laws of the Province of Maryland not objected to, but ratified in legal form, were sovereign and binding, and therefore Baltimore's interest was bound by them; and the returns of the Commissioners under the respective Acts which have been read, are to be taken as a part of the law, or at least equally effectual. The possession of the Indians for so long a period by virtue of the Act of Assembly was a sufficient title. The patent called Greenland begins at the creek, the second course it is admitted binds with the creek, and when the courses are to leave the creek and to return around the lands granted, it calls for the mouth of Whale Creek. The Commissioners have run different courses along the creek and in each instance supposed they were running the patent; it must therefore have been considered in former days as patent land quite to the creek. But whether defendants have shown a subsisting title or not out

of the plaintiff's, the plaintiff cannot recover, because his proceedings are null and void, for the lands being once granted were not the subject of the Land Office laws and could not be legally surveyed or patented under them. This question has undergone a legal adjudication in the case of Mr. Wells in the High Court of Errors and Appeals.

PER CURIAM. JOHNS, C. J. (Charge). Gentlemen of the jury, it has become our duty to observe on what has been said, and it is for you to decide upon it. This action is brought to recover lands in dispute under two patents obtained under the Land Office Acts. The right of plaintiff to recover must depend upon the validity of his title under those Acts. If his title is good, he ought to recover, if not he ought not to have your verdict in his favor. We have paid attention to the arguments, and we think the point a clear one, and we have no doubt. Whether the lands in this case were vacant, and such as could be taken up, is the question. We think they were not of that description. These lands having been taken up under the laws of Maryland, they were not subject to be taken up by the laws of this state.

It may not be improper to touch on another point, that is as to the location of Greenland. Plaintiff's title depends on the location of the Greenland patent, for if the runs of the latter bind upon Broad Creek, there was no room for the plaintiff's patents. Perhaps an observation or two may throw some light on this subject, for some facts are admitted which may guide us in discovering its original position. As to the beginning of Greenland, it is acknowledged to be at the creek. The second line also runs with the creek. It does not call for the creek afterwards, but it runs to a boundary at Whale Creek. It is contended as there are no expressions calling for the creek, it does not bind with it; but you are not to consider the courses and distances only, for the place is important. Suppose they run within a few feet of the creek; there is nothing more uncertain than the compass. If there is so much uncertainty, how can plaintiff give that satisfaction that is necessary to the jury? Is it probable that this survey ran so far from the creek a century and better ago? The original location was in 1675, but in 1711 it appears this land was located by Commissioners, and though not directly the same, yet is it not to be inferred that the Commissioners intended to locate this tract as Greenland and considered it as going to the creek? Is it to be supposed we understand it as well as they did almost a century ago?

The location is a fact for you to decide on; but the other question is a question of law, that is, that lands secured by an Act of

the State of Maryland in this manner [are] not subject to be patented under the laws of this state.

Verdict not guilty.